# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Case No. 26-CV-01497

William Watkins,

     Plaintiff,

vs.

Olympic Steel, properly Olympic

Steel, Inc.,

     Defendant.

**FULLY AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**
YES **X**   NO __

Plaintiff William Watkins ("Plaintiff") by and through the undersigned attorney, brings the following amended action Complaint for race discrimination in violation of Title VII and the Minnesota Human Rights Act, including hostile work environment, disparate treatment, and discriminatory discharge against Defendant Olympic Steel, Inc. (Defendant).

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable pursuant to LR 38.1 and Fed. R. Civ. P. 38(b).

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

2. This Court has supplemental jurisdiction to hear this Complaint and to adjudicate the State-law claims stated herein pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391 because Defendants do business in Minnesota and a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

4. Plaintiff is a former employee of Defendant who resides at 3610 Queen Ave N, #1, Minneapolis, MN 55412.

5. Defendant is a steel corporation that operates in Plymouth, Minnesota that is organized under the laws of the State of Delaware, with its principal place of business in Cleveland, Ohio.

## FACTS

6. Plaintiff started work for Defendant as a crane operator in June 2019 in Plymouth, Minnesota.

7. Plaintiff is a Black man.

8. During Plaintiff's employment with Defendant, Plaintiff suffered a physical impairment that substantially limited one or more major life activities, including bending, lifting, and performing repetitive physical work tasks.

9. Plaintiff's direct supervisor (Supervisor) often required Plaintiff and another Black employee to perform tasks outside their job duties. Supervisor did not similarly assign such tasks to white employees.

10. Supervisor subjected Plaintiff and other Black employee to a greater level of scrutiny and confrontation.

11. On numerous occasions, Plaintiff reported to Defendant's plant manager (Plant Manager) that Supervisor was harassing him and treating him differently because of his race. By the end of his employment, Plaintiff was regularly reporting mistreatment by Supervisor to Plant Manager.

12. Plant Manager or HR told Plaintiff that his complaints did not constitute harassment and that Supervisor was merely "giving him direction."

13. Throughout Plaintiff's employment, Defendant's employees used racial slurs approximately three to four times a week, most often when referring to machines as being "ni**a-rigged."

14. At least one other employee reported to HR about the use of the n-word, but HR did not address the report. Supervisor responded to complaints about use of the N-word by stating there was "nothing he could do about it" because it was "free speech."

15. On September 17, 2019, Plaintiff suffered an injury on the job. After Plaintiff returned to work Plaintiff requested accommodations, which Defendant approved through March 2020.

16. On August 10, 2021, Plaintiff submitted a doctor's letter indicating that his disability for which he had prior restrictions had been aggravated and he needed to avoid duties which demanded prolonged or repetitive bending for two or more hours daily.

17. Plaintiff requested accommodation not to be assigned tasks that demand prolonged or repetitive bending.  Defendant did not participate in the interactive process, implement the requested restrictions, or offer alternatives.

18. Thereafter, Supervisor often required Plaintiff to help with tasks outside of his typical crane operator duties. These assigned tasks required Plaintiff to perform repetitive

3

bending for more than two hours per day, in direct contravention of his medical restrictions. An example of this includes Supervisor assigning Plaintiff to work in locations around the work cite that require prolonged bending.

19. Before Plaintiff's termination on August 26, 2021, Plaintiff notified Plant Manager and HR that Supervisor was telling him to perform tasks that do not comply with his doctor's restrictions.

20. At the start of each shift, Defendants supervisors conducted mandatory meetings in the break room. Defendant generally required employees to attend these meetings fully dressed in their work uniforms.

21. On August 24, 2021, Plaintiff did not have time to change into his work uniform prior to the mandatory meeting. After the meeting, Supervisor confronted Plaintiff. Supervisor got within 6 feet during the pandemic and made Plaintiff uncomfortable. A disagreement occurred during which Plaintiff raised his voice at Supervisor.

22. Defendant conducted an investigation into the confrontation between Plaintiff and Supervisor. Defendant interviewed two people, and did not interview Plaintiff.

23. Upon information and belief, non-Black employees also attended such meetings in street clothes without discipline or comparable scrutiny over arguments with management.

24. On August 26, 2021, Defendant terminated Plaintiff's employment.

25. Defendant did not terminate similarly white employees who behaved like Plaintiff.

<u>**CAUSES OF ACTION**</u>

**COUNT I**

**Racial Harassment and Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e-2(a), and the Minnesota Human Rights Act, Minn. Stat. § 363A.08**

4

26. Plaintiff incorporate all preceding paragraphs of this Complaint by reference.

27. Plaintiff is member of a protected class because he is Black.

28. Plaintiff was subject to unwelcome harassment by Defendant which includes the frequent use of racial slurs by employees.

29. The harassment was based on Plaintiff's membership of his protected class.

30. The harassment affected the terms, conditions, and privileges of his employment, including racially hostile conduct and disparate treatment in assignment of work tasks by Supervisor.

31. The harassment was severe and pervasive. Defendant was notified of the use of racial slurs, including the N-word, and failed to take corrective action.

**COUNT II**

**Racial Discrimination and Discriminatory Discharge in violation of Title VII, 42 U.S.C. § 2000e-2(a), and the Minnesota Human Rights Act, Minn. Stat. § 363A.08**

32. Plaintiff incorporate all preceding paragraphs of this Complaint by reference.

33. Plaintiff is Black and a member of a protected class.

34. Plaintiff was meeting his legitimate job expectation.

35. Defendant terminated Plaintiff's employment.

36. Plaintiff was terminated under circumstances giving rise to an inference of discrimination, including differential treatment compared to similarly situated non-Black employees.

37. Upon information and belief, Defendant's similarly situated non-Black employees swore at and had confrontations with their supervisors and were not terminated and/or received lesser discipline.

38. Defendant retained non-Black employees with more disciplinary issues than Plaintiff.

## COUNT III

## Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) & (b)(5)(A), and the Minnesota Human Rights Act, Minn. Stat. § 363A.08

39. Plaintiff incorporates all preceding paragraphs of this Complaint by reference.

40. During Plaintiff's employment with Defendant, Plaintiff became injured on the job.

41. Plaintiff provided a doctor's note to Defendant explaining that he needs to avoid duties which demanded prolonged or repetitive bending over two hours daily.

42. The injury suffered caused a physical impairment that substantially limited one or more major life activities, including bending, lifting, and performing repetitive physical work tasks.

43. Plaintiff was a qualified person with a disability because he could perform the essential functions of his position with reasonable accommodation.

44. Defendant often required Plaintiff to work in duties outside of his job description that included the medically avoided tasks.

45. Plaintiff's reasonable accommodations request would not have caused undue hardship.

46. Supervisor assigned Plaintiff to complete jobs outside of his job description and contrary to his medical recommendations.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and award the following relief:

A.  Damages of at least **$50,000.00** in an amount to be determined at trial for Plaintiff's claims;

B.  An award of attorney fees as permitted by law.

C.  An award of punitive damages and compensatory damages as permitted by law.

D.  Prejudgment and post judgment interest as provided by law;

E.  Such other and further relief as the Court deems just and proper.

Date: <u>5/6/2026</u>

*/s/ Brian Stanley*
Brian Stanley
Attorney Reg #: 0399776
RWI Law, PLLC
60 South Sixth Street
Suite 2800
Minneapolis, MN 55402
Tel: (612) 363 2762
brian@rwilaw.com
