**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| WILLIAM WATKINS,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC STEEL, INC.,<br><br>Defendant. | Case No. 26-cv-1497 (LMP/DTS)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

William Watkins, pro se.

Greta Bauer Reyes, **Ogletree Deakins, Minneapolis, MN**, and Robert A. Zimmerman and Steven M. Moss, **Benesch Friedlander Coplan & Aronoff, Cleveland, OH**, for Defendant.

Plaintiff William Watkins alleges that Defendant Olympic Steel, Inc. ("Olympic") harassed him and discriminated against him because of his race and disability in violation of Title VII, the Americans with Disabilities Act ("ADA"), and the Minnesota Human Rights Act ("MHRA"). Olympic moves to dismiss, arguing that Watkins is barred from bringing this lawsuit because he did not timely file discrimination charges with the Equal Employment Opportunity Commission ("EEOC") or the Minnesota Department of Human Rights ("MDHR"). Because Watkins has not shown that he timely filed discrimination charges, the Court agrees and dismisses Watkins's complaint.

## BACKGROUND

Before diving into the factual background of Watkins's claims, the Court begins by detailing the procedural background of this case. The procedural background here is key

to understanding the Court's subsequent discussion of the factual background. That is because the Court—as noted below—will take judicial notice of documents not embraced by the operative complaint, but necessary to understand both Watkins's claims and the Court's ultimate decision.

## I. Procedural Background

On January 21, 2026, Watkins filed a pro se lawsuit in Minnesota state court alleging that Olympic discriminated against him on account of his race and disability. *See* ECF No. 1 at 7–10. Attached to the state court complaint was a June 12, 2025 letter sent to Watkins by the MDHR, generally informing Watkins that the MDHR had investigated his claims and found probable cause that Olympic engaged in discrimination. *See generally* ECF No. 1 at 12–15 (hereafter the "MDHR Letter").

Olympic, an Ohio company, removed Watkin's complaint to this Court on February 17, 2026, citing diversity jurisdiction under 28 U.S.C. § 1332(a), ECF No. 1 ¶¶ 11–12, and answered the complaint on February 24, 2026, ECF No. 5. Watkins—still pro se—filed an amended complaint. ECF No. 14. Watkins did not attach the MDHR Letter to this first amended complaint, nor did he reference any prior MDHR proceedings. *See generally id.* Olympic again answered. ECF No. 24.

On May 1, 2026, an attorney entered an appearance on Watkins's behalf, ECF No. 32, and filed a motion for leave to amend Watkins's complaint a second time, ECF No. 36. Watkins also filed the proposed second amended complaint. ECF No. 39. U.S. Magistrate Judge David T. Schultz granted the motion for leave and instructed Watkins to re-file the proposed second amended complaint, and Watkins filed the now-operative third

amended complaint on July 15, 2026, with the assistance of counsel, ECF No. 49.[1] That complaint did not attach the MDHR Letter nor reference any prior MDHR proceedings.[2] In the third amended complaint, Watkins alleges that: (1) Olympic violated 42 U.S.C. § 2000e-2(a) of Title VII and Section 363A.08 of the MHRA by committing racial harassment of him and creating a hostile work environment, ECF No. 49 ¶¶ 26–31; (2) Olympic engaged in racial discrimination and a discriminatory discharge in violation of Title VII and the MHRA, *id.* ¶¶ 32–38; and (3) Olympic failed to accommodate his disabilities in violation of 42 U.S.C. § 12112(a) and (b)(5)(A) of the ADA and the MHRA, *id.* ¶¶ 39–46.

Watkins's counsel thereafter moved to withdraw, ECF No. 43, and Magistrate Judge Schultz granted the motion on August 3, 2026, ECF No. 52. On August 5, 2026, Olympic moved to dismiss the third amended complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 56. In support of the motion, Olympic attached two new documents, which had not been previously provided to the Court. *See* ECF No. 59-1. The first is a July 14, 2022 letter sent to Olympic by the MDHR. *Id.* at 2–12 (hereafter the "Charge Letter"). This Charge Letter informs Olympic that the MDHR received a July 12, 2022 charge of discrimination and generally describes Olympic's obligation to answer the

[1] The now-operative complaint is the "third" amended complaint in name only, as it is identical to the second amended complaint Watkins filed with his motion for leave. *Compare* ECF No. 39 *with* ECF No. 49.

[2] The Court finds this omission slightly perplexing. In the motion to amend, Watkins acknowledges that he filed a complaint with the MDHR and that the MDHR issued a probable cause letter. *See* ECF No. 38 at 1–2. Yet the amended complaint makes no mention of that relevant history. *See generally* ECF No. 49.

charge along with the MDHR's next steps. *Id.* The second is the underlying July 12, 2022 charge of discrimination brought by Watkins. *Id.* at 11–12 (hereafter the "Charge"). Olympic proposes that the Court may take judicial notice of both documents as "matters of public record." ECF No. 59 ¶ 2 (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002)).

Watkins, now representing himself, filed a response to Olympic's motion to dismiss on August 21, 2026, ECF No. 61, and Olympic filed a reply on September 4, 2026, ECF No. 63.[3] The Court took Olympic's motion to dismiss under advisement on September 10, 2026. ECF No. 64.

## II. Factual Background

### A. Background from the Complaint

Olympic is a steel corporation with a location in Plymouth, Minnesota. ECF No. 49 ¶ 5. Watkins, a Black man, began working for Olympic in 2019 as a crane operator, *id.* ¶¶ 6–7, and alleges that his supervisors and coworkers discriminated against him on account of his race. For instance, Watkins alleges that supervisors required him—and other

---

3 On September 17, 2026, Watkins filed a "Motion to Deny Defendant['s] Claim to Dismiss." ECF No. 65. Watkins, generally, reiterates the arguments he made in his response to Olympic's motion to dismiss. So the Court construes Watkins's "motion" as an attempt to file a surreply. Watkins did not seek leave to file a surreply, as required by Local Rule 7.1, and after reviewing the filing the Court does not think it necessary for the Court's resolution of the issues. *See Ware v. Wind Transp. Sols., Inc.*, No. 4:23-cv-00300, (AGF), 2025 WL 1178487, at *7 (E.D. Mo. Apr. 23, 2025) (explaining that a surreply is not warranted "where the reply responds to the argument in the resistance and does not raise new arguments"). The Court will accordingly deny Watkins's motion.

Black employees—to perform tasks outside of their job duties and subjected them to greater levels of scrutiny. *Id.* ¶¶ 9–10. Watkins also alleges that coworkers regularly used racial slurs around him. *Id.* ¶ 13. And Watkins alleges that he and at least one other employee complained to Olympic's human resources department, *id.* ¶¶ 12, 14, and that he complained to his plant manager, *id.* ¶¶ 11–12, but neither the human resources department nor the plant manager acted on the complaints.

Watkins also alleges that he suffered a workplace injury on September 17, 2019, "that substantially limited one or more major life activities, including bending, lifting, and performing repetitive physical work tasks." *Id.* ¶¶ 8, 15. Olympic approved accommodations for Watkins through March 2020. *Id.* ¶ 15. On August 10, 2021, Watkins informed Olympic that he aggravated his injury and that he "needed to avoid duties which demanded prolonged or repetitive bending for two or more hours daily." *Id.* ¶ 16. But Olympic did not engage Watkins on his request and instead required Watkins to perform duties that were in "contravention of his medical restrictions." *Id.* ¶¶ 17–18.

Finally, Watkins alleges that on August 24, 2021, his supervisor confronted him after the daily morning meeting because Watkins had not changed into his work uniform. *Id.* ¶ 21. The supervisor got close to Watkins, and Watkins raised his voice in response. *Id.* Olympic thereafter investigated the incident and ended Watkins' employment on August 26, 2021. *Id.* ¶ 24.

### B. Background from the Exhibits

Watkins does not mention any MDHR proceedings or attach any exhibits to the third amended complaint. *See generally* ECF No. 49. But the MDHR Letter (attached by

Watkins to his original state court complaint), and the Charge and Charge Letter (attached by Olympic in support of its motion to dismiss), make clear that a lengthy MDHR process preceded this federal action.

Of course, that the MDHR Letter, Charge, and Charge Letter are not attached to or embraced by the operative complaint would ordinarily render them irrelevant at this stage. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (citation modified) (explaining that matters "outside the pleading may not be considered in deciding a Rule 12 motion to dismiss"). But the Court may consider—at any stage—matters of public record not attached to or embraced by a complaint under the doctrine of judicial notice. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss"). In fact, Olympic itself emphasizes that the Court may take judicial notice of the Charge and Charge Letter. *See* ECF No. 59 ¶ 2. The Court agrees. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (holding that "an EEOC charge is a part of the public record and may be considered on a motion to dismiss"); *Faibisch*, 304 F.3d at 802 (citation modified) ("District courts regularly look upon EEOC charges as matters within the public record."). Similarly, although Watkins did not attach the MDHR Letter to the operative complaint, the Court may consider it a matter of public record. *See, e.g.*, *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (taking judicial notice of a state administrative decision).

So the Court will consider all three letters. And the three help explain what transpired before this lawsuit. For instance, the Charge shows that Watkins kick-started the MDHR process on July 12, 2022, when he filed the Charge with the MDHR and alleged

that Olympic racially harassed him and neglected to accommodate his disability. ECF No. 59-1 at 11–12. Although the Court is in the dark about what precisely happened between that date and early 2025, it is clear that the MDHR investigated Watkins's allegations and found them credible, because on February 10, 2025, the MDHR issued a probable cause determination. ECF No. 1 at 15. Olympic appealed that probable cause determination, and on June 11, 2025, the MDHR affirmed, concluding that Watkins's accusations of racial discrimination and failure to accommodate were supported by evidence. *Id.* at 12–15.

On June 12, 2025, the MDHR sent Watkins a letter inviting him to opt-in to the MDHR's "conciliation" process as an "alternative way to resolve this charge." *Id.* at 11. If conciliation was unsuccessful, "then MDHR may proceed with litigation" against Olympic. *Id.* The Court is, again, in the dark about what happened in the MDHR process after that conciliation letter. But Watkins filed this action on January 21, 2026. *See* ECF No. 1.

## ANALYSIS

In determining whether a complaint states a claim under Rule 12(b)(6), the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792. The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation modified). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Watkins

is representing himself, the Court is mindful to liberally construe his filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

## I. Watkins's EEOC Claims

Both Title VII and the ADA require individuals to exhaust administrative remedies before suing in federal court . To exhaust administrative remedies under either Title VII or the ADA, a plaintiff must: "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citing 42 U.S.C. § 2000e-5(b), (c), (e)); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) ("Title VII requires that before a plaintiff can bring suit in court to allege unlawful discrimination, she must file a timely charge with the EEOC or a state or local agency with authority to seek relief."); *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021) ("Under the ADA, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC before filing a lawsuit against an employer."). A timely charge of discrimination with the EEOC must be filed within "300 days of the alleged 'unlawful employment practice.'" *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024) (quoting 42 U.S.C. § 2000e-5(e)(1)). The ADA follows the same timeline. An ADA claim must be brought within 300 days of the "allegedly discriminatory practice." *Gipson v. Bos. Sci. Scimed Inc.*, No. 25-cv-3014 (DWF/DJF), 2026 WL 1998465, at *2 (D. Minn. July 10, 2026).[4]

---

[4] Title VII actually has two timelines. The general timeline requires that a charge of discrimination be brought within 180 days. *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge

Here, Watkins filed a charge of discrimination with the MDHR on July 12, 2022. ECF No. 59-1 at 11–12.[5] But Watkins's employment was terminated by Olympic on August 26, 2021, which was 321 days before he brought his charge. *See* ECF No. 49 ¶ 24. His Title VII and ADA claims are time-barred as a result. *See* 42 U.S.C. § 2000e-5(e)(1) (noting that the clock starts the day "after the alleged unlawful employment practice occurred").

In response to Olympic's argument, Watkins states that he "made contact" with the MDHR on September 3, 2021, just weeks after his August 26, 2021 termination. ECF No. 61 at 2. And in support, Watkins attaches a screenshot of an email he purportedly sent

---

under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred."). But for discriminatory acts that occur in Minnesota, there is more time to bring such a charge. *Id.* ("such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred"). Olympic acknowledges that the more generous 300-day limitation period applies here. ECF No. 58 at 5; *see also D.W. v. Radisson Plaza Hotel Rochester*, 958 F. Supp. 1368, 1373 (D. Minn. 1997) ("Because Minnesota is a deferral state, a complainant must file a charge within 300 days from the date of the alleged unlawful employment action.").

[5] Watkins makes no allegation that he ever filed a charge with the EEOC itself. But Olympic appears to concede that Watkins's MDHR filing meets Watkins's EEOC filing obligations. ECF No. 58 at 7. That is likely because the EEOC and MDHR have historically operated under a "worksharing" agreement, wherein "each agency serves as the agent of the other for the purpose of receiving a charge." *Pronk v. City of Rochester*, No. 22-cv-3090 (MJD/DLM), 2023 WL 5815844, at *3 (D. Minn. Sept. 8, 2023) (citation modified); *see also* Minn. R. 5000.0400, subp. 2a. ("A charge filed with the [MDHR] that alleges violation of antidiscrimination laws administered by EEOC or [the U.S. Department of Housing and Urban Development ("HUD")] will automatically be filed by the [MDHR] with the EEOC or HUD."); *Fair Employment Practices Agencies (FEPAs) and Dual Filing*, EEOC, https://www.eeoc.gov/fair-employment-practices-agencies-fepas-and-dual-filing [https://perma.cc/3YA8-S5K4] (explaining that when someone "initially files with a [state agency] that has a worksharing agreement with the EEOC, and the allegation is covered by a law enforced by the EEOC, the [state agency] will dual file the charge with EEOC . . . but will usually retain the charge for processing").

to an MDHR human rights investigator, in which Watkins states "I'll be sending you more when I get it all together." ECF No. 62 at 1.[6] To the extent that Watkins argues that this informal email "contact" qualifies as a formal "charge," he is mistaken. Minnesota law provides that an individual only initiates the MDHR process by filing a "verified charge . . . in writing by hand, or electronically with an unsworn declaration under penalty of perjury, on a form provided by the commissioner and signed by the charging party." Minn. Stat. § 363A.28, subd. 1; *see also* Minn. R. 5000.0400 (listing similar requirements). Watkins's email is insufficient to constitute such a charge. *Porter v. Homehelpers*, No. 4:22-cv-1247 SEP, 2023 WL 2072396, at *4 (E.D. Mo. Feb. 17, 2023) (concluding that an email to the EEOC did not count as a formal charge when the email did not meet any of the EEOC's requirements). And Watkins filed a formal charge on July 12, 2022, *see* ECF No. 59-1 at 11–12, demonstrating that even Watkins understood his earlier email to be preliminary in nature, *Diez v. Minn. Mining & Mfg. Co.*, 88 F.3d 672, 677 (8th Cir. 1996) ("The fact that [the plaintiff] later filled out a formal charge indicates that he understood the questionnaire to be preliminary."). Because Watkins filed his formal charge more than 300 days after his employment ended, it is untimely.

Olympic suggests that Watkins's late filing ends the matter. ECF No. 58 at 7 ("Plaintiff did not timely file his administrative charge . . . . This compels dismissal of those claims with prejudice."). That's not quite true. It is true that Olympic has met its

---

[6] Watkins sent his email in response to an email from an MDHR investigator. But the Court cannot discern what the investigator wrote to Watkins, because the exhibit filed by Watkins makes that portion of the exchange unreadable. *See* ECF No. 62 at 1–2.

burden to show that Watkins did not timely file with the EEOC. *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (noting that the "failure to exhaust administrative remedies is an affirmative defense that a defendant must prove"). But the timeliness requirement is not jurisdictional. Instead, it "operates in the nature of a statute of limitations and is subject to equitable tolling and estoppel." *Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir. 1995).

So, Watkins's late filing *could* be forgiven. The problem is that Watkins does not show that he is entitled to equitable tolling or estoppel here. *Jenkins v. Mabus*, 646 F.3d 1023, 1028 (8th Cir. 2011) (explaining that it is the plaintiff's burden to show why equitable tolling is warranted). The circumstances that warrant equitable tolling generally must be "truly beyond the control of the plaintiff." *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989). As a result, tolling provides a "limited and infrequent form of relief appropriate only where (1) the plaintiff pursued [his] claims diligently but (2) some *extraordinary* circumstance stood in [his] way." *Brinkman v. Nasseff Mech. Contractors Inc.*, 251 F. Supp. 3d 1266, 1274 (D. Minn. 2017) (citation modified).

Watkins alleges no facts by which this Court can "reasonably infer that an exception to the timeliness requirements of 42 U.S.C. § 2000e-5 could be warranted." *Menze v. Astera Health*, No. 23-cv-03901 (KMM/LIB), 2024 WL 4602730, at *4 (D. Minn. Sept. 30, 2024). Watkins's complaint is silent on his MDHR filing in the first place. At best, Watkins asserts for the first time in response to Olympic's motion to dismiss that he had "no control over the timeframe on the agency . . . to mail out paperwork nor the los[s] of mail nor replacement of mail." ECF No. 61 at 2. Liberally construed, Watkins appears to argue that

mailing issues delayed his ability to file on time. But Watkins provides no actual details to support his claim, and Watkins provides no explanation for what he did (or did not do) to diligently pursue his rights beginning on August 27, 2021, the day after his employment was terminated. It is plausible, of course, that mailing interruptions caused *some* delay. That Watkins might have experienced some delay is not out of the ordinary. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) (describing delay caused by the late receipt of mail as a "garden variety claim of excusable neglect"). Instead, it is on Watkins to explain why circumstances made it "truly beyond [his] control" to file on time. *See, e.g.*, *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 798 (8th Cir. 1998) (noting examples of equitable tolling based on the EEOC's affirmative misrepresentations).[7] Here, it appears that Watkins simply waited until the last minute to file, at which point Watkins "assumed [the] risk" of a mailing delay. *Jackson v. Hennepin Healthcare Sys., Inc.*, 134 F.4th 1262, 1264 (8th Cir. 2025); *see also Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 590 (8th Cir. 2003) ("By mailing the complaint one day before the deadline, [plaintiff] assumed the risk that

[7] Similarly, in his proposed surreply, Watkins asserts that this happened during "Covid-19," that the Government was "closed to the public," and "time was pushed back." ECF No. 65 at 2. Notably, of course, Watkins's employment was terminated on August 26, 2021, well after much of the shutdown effects of COVID-19 had dissipated. Against that backdrop, Watkins must do more than allude to the pandemic and instead must explain how his failure to file within the 300-day deadline "was somehow caused by the pandemic." *Porter v. Homehelpers*, No. 4:22-cv-1247 SEP, 2023 WL 2072396, at *4 (E.D. Mo. Feb. 17, 2023); *see also Clemente v. Allstate Ins. Co.*, No. 2:22-cv-00056-CCW, 2022 WL 17976324, *13 (W.D. Penn. Dec. 28, 2022) ("While there may be circumstances in which specific impacts of COVID-19 could serve as a basis for equitable tolling," a plaintiff must do more than "allege only that COVID-19 was ongoing at the relevant time, without describing what impact it had on Plaintiffs and their effort to assert their rights").

any slight disruption of ordinary mail service might delay the filing."). Based on this record, the Court sees no plausible basis to apply equitable tolling and grants Olympic's motion to dismiss Watkins's federal claims as a result. *Jackson*, 134 F.4th at 1263 (affirming the grant of a "motion to dismiss the action on the ground that the complaint was untimely filed").

**II. MHRA Claims**

Watkins's state-law claims, which allege various violations of the MHRA, are likewise subject to dismissal. But for a slightly different reason. Unlike Title VII, the MHRA does not require an individual to file charges with the MDHR before the individual may sue in court. Instead, the MHRA allows an individual to go directly to court. *See* Minn. Stat. § 363A.28, subd. 1 ("Any person aggrieved by a violation of this chapter may bring a civil action as provided in section 363A.33, subdivision 1."). And the MHRA provides the option to file charges with the MDHR. *Id.* (providing that individuals may file a lawsuit "or may file a verified charge with the [MDHR] commissioner or the commissioner's designated agent"). Once a charge is filed, the MDHR must "promptly inquire into the truth of the allegations of the charge," *id.*, subd. 6(a), and decide whether "probable cause exists to credit the allegations of unfair discriminatory practices," *id.* subd. 6(c)–(d). If the MDHR determines that probable cause exists, the MDHR alerts the respondent, who may request reconsideration of the probable cause determination. *Id.* subd. 6(d). If reconsideration is denied, the MDHR then attempts to engage in "conciliation" with the respondent and individual complainant. Minn. R. 5000.0800. If the parties do not agree to attempt conciliation, or if the resulting conciliation is

unsuccessful, the MDHR "may terminate attempts to conciliate the matter and shall issue a complaint . . . unless the [MDHR] determines to dismiss the charge." Minn. R. 5000.0800, subp. 2; *see also* Minn. R. 5000.0900, subp. 1 ("The [MDHR] commissioner shall issue a complaint . . . after attempts to eliminate the unfair discriminatory practice by conciliation have been terminated."). That complaint may be filed in either state court or with an administrative law judge. Minn. R. 5000.0900, subp. 3.

Importantly, although an individual may skip the MDHR process and head straight to court, once an individual opts-in to the MDHR process, the freedom to file a lawsuit subsequently is constrained by certain timeliness provisions. On the one hand, if the MDHR dismisses a charge for any reason or has "reaffirmed a determination of no probable cause," the individual must bring a civil action "within 90 days." Minn. Stat. § 363A.33, subd. 1(1)–(2). On the other hand, if the MDHR has not dismissed a charge, the charge remains pending, and the commissioner has not entered into a conciliation agreement "to which the charging party is a signator," *id.* subd. 1(3), the individual may disengage from the MDHR process and bring a lawsuit but must "notify the commissioner of an intention to bring a civil action," and must commence the action "within 90 days of giving the notice." *Id.* This provision ensures that the MDHR has notice of the individual's decision to disengage from the MDHR process, so that the MDHR can terminate the MDHR process and "avoid duplicative actions." *Ahmed v. GCA Prod. Servs., Inc.*, No. A08-1104, 2009 WL 1119090, at *3 (Minn. Ct. App. Apr. 28, 2009).

The documents from the parties show alignment, to a point, with this process. For instance, the Court knows that Watkins brought a charge of discrimination on July 12, 2022,

*see* ECF No. 59-1 at 11–12, that the MDHR found probable cause and later denied Olympic's reconsideration request, ECF No. 1 at 12, and that the MDHR invited Watkins to attempt conciliation on June 12, 2025, *id.* at 11.

But the Court is unsure what, if anything, happened between the June 12, 2025 letter and January 21, 2026, the date Watkins filed his state court complaint. *See* ECF No. 1 at 7–10. Yet what happened in that period determines whether Watkins has a viable MHRA claim. If, for instance, the parties did not agree to engage in conciliation, or conciliation proved unsuccessful, then the MDHR was required to either "terminate attempts to conciliate the matter and [] issue a complaint" or "dismiss the charge." Minn. R. 5000.0800, subp. 2. If the MDHR dismissed Watkins's charge, Watkins was required to file his lawsuit within 90 days "after receipt of notice" of such dismissal. Minn. Stat. § 363A.33, subd. 1(1). If, on the other hand, the parties had not agreed to conciliation, but the MDHR had not yet dismissed the charge, then Watkins was required to "notify the commissioner of an intention to bring a civil action," *id.* subd. 1(3), so that the MDHR may "terminate all proceedings," Minn. R. 5000.0550.

Watkins makes no allegations that he has satisfied either the timeliness requirement or the alternative notice requirement. As to timeliness, it could be that the MDHR dismissed Watkins's charge more than 90 days before January 21, 2026, which makes this federal case too late. *See, e.g.*, *Hussey v. Vantage Fin., LLC*, No. 24-cv-3679 (DWF/SGE), 2025 WL 2336980, at *4 (D. Minn. Aug. 13, 2025). It is alternatively possible that the MDHR dismissed Watkins charge *less* than 90 days before he filed his complaint, which makes this federal lawsuit timely. As to notice, if the MDHR case has not been closed,

then Watkins is required to provide notice to the MDHR about this action. If he has not done so, then his case cannot proceed until he does. *Scott v. CSL Plasma, Inc.*, 151 F. Supp. 3d 961, 964 (D. Minn. 2015) (noting that an individual is "entitled to bring an action . . . as long as she filed her complaint within 90 days of notifying the Department of her intention"). And if he did provide the MDHR with notice of his intention to file a civil complaint, then when? If that notice was given more than 90 days before January 21, 2026, Watkins's complaint here is too late. *Tewolde v. Owens & Minor Distrib., Inc.*, No. 07-cv-4075 (DSD/SRN), 2009 WL 1653533, at *6 (D. Minn. June 10, 2009) (dismissing complaint where plaintiff "did not bring this action within the required ninety days").

It is ultimately unclear what happened between June 12, 2025, and January 21, 2026. At this stage, the Court cannot guess whether Watkins might have a viable civil action; it is Watkins's burden to show a right to relief that is more than "speculative." *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Because he has not met that burden, the Court dismisses Watkins's MHRA claims.

## III. With or Without Prejudice

The final question before the Court is whether to dismiss Watkins's claims with or without prejudice to refiling. "A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice." *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019) (citing *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). Dismissal without prejudice is typically favored in this Circuit, *see, e.g.*,

*Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983), and is warranted when a plaintiff's claims "might conceivably be repleaded with success," *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Dismissal with prejudice is appropriate, however, when a plaintiff has shown "persistent pleading failures despite one or more opportunities to amend or when the record makes clear that amendment would be futile." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883 (D. Minn. 2024) (citation modified).

Olympic asks the Court to dismiss with prejudice because Watkins "has been given ample opportunity to file a Complaint that complies with the law. He has not and . . . never will." ECF No. 58 at 10. There is some merit to Olympic's request. As detailed above, Watkins filed a pro se state-court complaint, ECF No. 1 at 7–10, and a pro se amended complaint, ECF No. 14. Watkins then, with counsel, filed the now-operative third amended complaint. ECF No. 49. And in only one of the complaints did Watkins provide any insight into his MDHR filing. *See* ECF No. 1 at 11–15.

But the Court does not believe Watkins has demonstrated the sort of "persistent pleading failures," *Harris*, 729 F. Supp. 3d at 883, that warrant dismissal with prejudice. Notably, Olympic did not move to dismiss either of Watkins's pro se complaints. ECF Nos. 5, 24. And in response to Olympic's motion to dismiss, ECF No. 56, to which Watkins responded pro se, Watkins attempted to argue that his claims should not be time-barred, ECF No. 61 at 2. Finally, and most importantly, Watkins's claims "might conceivably be repleaded with success." *Craane*, 2019 WL 2147062, at *5. As noted, the Court dismisses

Watkins's federal claims because they were untimely, and he has failed to establish that he is entitled to equitable tolling. And the Court dismisses Watkins's MHRA claims because the record shows nothing at all regarding the status of the MDHR case. The Court does not know if they were timely or not. Both results could change if Watkins were to show he is entitled to equitable tolling or if he were to provide more information about the status of the MHRA process. Given that Watkins represents himself, and the possibility that his failure to plausibly allege a claim stems from his failure to include certain information, the Court declines Olympic's invitation to dismiss the complaint with prejudice at this time.

## CONCLUSION

For these reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Olympic Steel's Motion To Dismiss (ECF No. 56) is **GRANTED**;
2. William Watkins's Motion To Deny Defendant's Claim To Dismiss (ECF No. 65) is **DENIED**; and
3. The third amended complaint (ECF No. 49) is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 15, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge